UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00050-GNS

FADI FAKHRI et al.                                                                         PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY
METROPOLITAN GOVERNMENT et al.                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Louisville-Jefferson County Metro Government and Louisville Metro Police Department's Partial Motion to Dismiss (DN 6). The matter is ripe for adjudication. For the reasons that follow, Defendants' motion is **GRANTED**.

### I.     BACKGROUND

This lawsuit was filed by Fadi Fakhri ("Fakhri") and Qaderyia Fadaam ("Fadaam") as administrators of the estate of Raad Fakhri Salman ("Salman") asserting violations of federal and state law.[1] (Compl. ¶¶ 1-8, DN 1). Defendant Brandon Hogan ("Hogan") was at the relevant time a sergeant employed by Defendant Louisville Metro Police Department ("LMPD") of Defendant Louisville-Jefferson County Metro Government ("Metro Government").

The events leading to this action occurred on July 5, 2018, in Louisville, Kentucky. (Compl. ¶ 17). Salman was at the time suffering from an unspecified form of psychosis for which he was prescribed Risperdal. (Compl. ¶ 16). Salman had not, however, been taking his Risperdal in the days leading up to July 5 and had exhibited noticeable symptoms of mental illness. (Compl. ¶ 16).

---

[1] The Court will refer to these individuals collectively as "Plaintiffs."

Around 11:43 AM on July 5, Salman dialed 911 and requested police assistance at his apartment. (Compl. ¶ 17). Salman spoke primarily Arabic but requested police assistance and stated his address in English. (Compl. ¶ 20). A woman could be heard screaming in the background, and at one point she too picked up the phone and requested police assistance. (Compl. ¶ 21). The 911 operator connected Salman to a language line where a translator attempted to translate part of the conversation before putting her supervisor on the line. (Compl. ¶ 22). Because of his mental state, Salman was unable to effectively answer many questions asked by the 911 workers. (Compl. ¶¶ 23-24). Notwithstanding this difficulty, a police Run Report shows the 911 workers understood some statements from Salman, including: Salman was inside the apartment threatening to kill and torture his wife; Salman stated someone could send him back to Iraq; Salman said police should come in twenty minutes or he would kill his wife; Salman repeatedly said he couldn't hear; Salman stated again that the police had twenty minutes to arrive or he would "slaughter" his wife. (Compl. ¶ 25). The call disconnected at 11:59:25 AM. (Compl. ¶ 26). At 12:01:00 PM, the run reports states that LMPD Unit 416C was en route to Salman's residence. (Compl. ¶ 26).

At 12:02:10 PM, the property manager of Salman's apartment called 911 stating that a man identified as Salman was threatening a woman with a knife. (Compl. ¶ 27). Additional units responded, including a SWAT unit that Plaintiffs believe included Defendant Brandon Hogan ("Hogan"), which responded at 12:05:00 PM. (Compl. ¶¶ 28-29). At the time, Hogan had been engaged in a SWAT training exercise approximately half a mile from Salman's apartment. (Compl. ¶ 30).

At 12:06:06 and 12:06:56 PM respectively, Salman placed two additional 911 calls. (Compl. ¶ 31). When Hogan arrived, Salman was standing outside his apartment holding a knife,

and his wife, Fadaam, was sitting on the ground. (Compl. ¶¶ 32-34). Both Salman and Fadaam were several feet from where Hogan stood with his weapon drawn. (Compl. ¶ 35). According to the LMPD, Hogan ordered Salman to drop the knife multiple times, but Plaintiffs dispute this account, noting that the 911 recording does not contain audio evidence of those orders, despite the fact that Salman was holding his phone and other voices are audible in the background. (Compl. ¶ 36). Hogan then shot Salman multiple times in the face and head, killing him. (Compl. ¶ 38).

Plaintiffs note that statements made by LMPD to media outlets indicated that Hogan fired on Salman to allow Fadaam to flee to safety. (Compl. ¶ 38). Plaintiffs dispute this, however, claiming that Fadaam's sobs are audible on the 911 call, reflecting that she stayed by her husband's side after the shooting. (Compl. ¶ 38).

Plaintiffs further note that someone can be heard on the 911 recording requesting an ambulance at 12:07:32 PM, despite the fact that the Run Report does not indicate shots were fired until 12:08:45. (Compl. ¶ 40). Assuming the 12:07:32 PM ambulance request is an accurate measure of when Hogan shot Salman, Plaintiffs point out that, if the rest of the Run Report is to be believed, Hogan managed to end his SWAT training exercise, go to his vehicle, travel a half mile, find the relevant apartment, exit his vehicle, assess the situation, draw his weapon, give multiple commands to Salman to drop the knife, witness Salman's refusal to comply, reevaluate the need to use deadly force, and shoot Salman all within a span of two minutes and thirty-two seconds. (Compl. ¶ 41).

In Count I, Plaintiffs charge that Hogan's actions in such a short span violated the LMPD's Standard Operation Procedures Manual, were objectively unreasonable, and amount to an unconstitutional use of excessive force in violation of 42 U.S.C. § 1983. (Compl. ¶¶ 46-58). In Count II, Plaintiffs assert Metro Government is liable under Section 1983 for the ratification of or

3

tolerance of the customary violation of civil rights. (Compl. ¶¶ 59-77). In Count III, Plaintiffs assert LMPD is similarly liable for ratification and tolerance of customary constitutional violations, but add that LMPD is further liable because its failure to train and retrain officers with respect to the use of force and implicit bias amounts to deliberate indifference. (Compl. ¶¶ 78-99).

Now, Defendants Metro Government and LMPD seek dismissal of Counts II and III, arguing Plaintiffs have failed to state a claim upon which relief may be granted. (Defs.' Mot. Dismiss, DN 6 [hereinafter Defs.' Mot.]). Additionally, Defendants seek dismissal of Plaintiffs' state law claims on grounds of sovereign immunity.

## II.   JURISDICTION

This action arises under the laws of the United States, and the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## III.   STANDARD OF REVIEW

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a defendant's motion to dismiss, the Court will "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

## IV. DISCUSSION

### A. Count II Against Metro Government

Under 42 U.S.C. § 1983, municipalities are not vicariously liable for the unconstitutional actions of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). For municipal liability to attach, a causal link must connect the alleged constitutional deprivation to a policy or custom of the municipality. *Deaton v. Montgomery Cty.*, 989 F.2d 885, 889 (6th Cir. 1993). "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). "The official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479-80 (internal quotation marks omitted).

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may show the existence of an illegal policy or custom by showing "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

Plaintiffs assert that Metro Government ratified Hogan's alleged unconstitutional conduct. (Compl. ¶¶ 62-69). To show ratification by a municipality, a plaintiff must plead facts sufficient to establish both that a final policy maker approved an investigation, and that the investigation was so inadequate as to amount to ratification of the alleged constitutional violation. *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 861-62 (N.D. Ohio 2011).

Plaintiffs have offered scant facts to support the ratification claim. While Plaintiffs argue that an office tasked with auditing various city agencies made no recommendations with respect to LMPD's general use of force policies, and while Plaintiffs offer the more specific assertion that no one was fired following Salman's death, neither of these facts identify a final policy maker either whose affirmative pronouncement or silence amounts to ratification by Metro Government. (Compl. ¶¶ 62-67). Indeed, the language of the complaint specifically states that the office allegedly charged with investigating incidents related to the use of force does not possess final decision making authority and instead makes recommendations to various officials. (Compl. ¶ 65). Plaintiffs' total failure to identify a decision maker with final authority is fatal to their ratification claim. *Sweat v. Butler*, 90 F. Supp. 3d 773, 785 (W.D. Tenn. 2015).

Plaintiffs further allege that Metro Government customarily tolerates federal rights violations. (Compl. ¶¶ 70-77). To establish liability under this standard, the custom asserted must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. "In turn, the notion of 'law' must include '[d]eeply embedded traditional ways of carrying out state policy.'" *Doe v. Claiborne Cty.*, 103 F.3d 495, 507-08 (6th Cir. 1996) (alteration in original) (quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940)). "It must reflect a course of action deliberately chosen from among various alternatives." *Id.* at 508 (citation omitted).

Plaintiffs here do nothing more than recite a string of legal conclusions bolstered by the single vague allegation that the use of excessive force in this case is part of a pattern. Plaintiffs' response is unhelpful as it merely restates the allegations in the Complaint and argues that such statements are sufficient to state a claim. (Pls.' Resp. Defs.' Mot. Dismiss 3-5, DN 7 [hereinafter Pls.' Resp.]). Plaintiffs have not shown how the alleged inaction by the moving Defendants represents a deliberately chosen course of action. Plaintiffs' conclusory allegation that LMPD failed to act in the face of overwhelming evidence of excessive force is nothing but a bare assertion. Plaintiffs have therefore failed to establish a custom of tolerance of federal rights violations.

### B.     Count III Against LMPD

First, LMPD is not an entity that can be sued. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Rather than dismissing this count in full, however, the Court will impute the count against LMPD to Metro Government.

As above, Plaintiffs assert theories of ratification and acquiescence in federal rights violations, but they add a charge of municipal liability based on failure to train or retrain. (Compl. ¶ 80). With respect to ratification, Plaintiffs recycle the charge previously aimed at Metro Government, contending that the absence of any record of discipline, investigation, or termination following this incident amounts to ratification. (Compl. ¶¶ 81-86).

The Complaint appears to blend theories of ratification and acquiescence amounting to deliberate indifference against Metro Government. In Paragraphs 81 to 84, Plaintiffs focus on LMPD supervisors, their knowledge of LMPD's use of force protocol, and assert the inference that LMPD's record of inaction represents either a failure to investigate or a tacit approval of the use of excessive force. Meanwhile, in Paragraphs 85 and 86, Plaintiffs assert the failure to investigate amounts to deliberate indifference.

Under the ratification theory, Plaintiffs' claim fails as a matter of law because it does not identify with any specificity a decision made by a decision-maker with ultimate authority. *Rush*, 771 F. Supp. 2d at 861-62. "Ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)).

Plaintiffs' tolerance/acquiescence theory fails for lack of specificity. Plaintiffs offer baseless and conclusory statements that do little more than recite legal requirements. Plaintiffs assert that LMPD officials have or should have access to information concerning incidents of excessive force. This, in turn, means LMPD does or should investigate. But because Plaintiffs are unaware of terminations or discipline resulting from excessive force investigations, and they reason therefore that LMPD must have acquiesced to the use of excessive force. (Compl. ¶¶ 31-83).

These vague allegations do not create a plausible inference of acquiescence. Plaintiffs do not, in fact, even allege that Defendants failed to investigate, merely that Plaintiffs are unaware of any investigation. Plaintiffs do not even state whether they attempted to determine whether LMPD conducted an investigation or how LMPD stymied Plaintiffs' efforts to obtain that information. "Although the factual allegations in a complaint need not be detailed, they 'must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.'" *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).[2] Plaintiffs' allegations are

---

[2] "In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal*'s standards strictly." *Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (citations omitted). While true, the Court in

8

pure speculation and do not state a claim under an acquiescence theory. Plaintiffs claims for ratification and acquiescence against LMPD will therefore be dismissed.

Plaintiffs appear to revive their acquiescence claim in a separate section of the Complaint. (Compl. ¶¶ 92-99). This section fares no better. Again, Plaintiffs recite almost exclusively legal conclusions. The one relevant fact alleged—that there is overwhelming evidence of the use of excessive force within LMPD—is so vague, speculative, and unsupported by citation as to render it meaningless. This acquiescence claim is also dismissed.

The next issue is whether Plaintiffs have properly pleaded that LMPD failed to train or retrain its officers. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiffs may state a failure to train claim in two different ways. First, to show a generalized failure to train, a plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (citations omitted). Alternatively, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (citation omitted). This second, single incident claim applies "in a narrow range of circumstances" where "a violation of federal rights may be a highly

---

*Hutchison* further noted its discomfort with the heightened pleading standards, particularly in Section 1983 cases. *Id.* at 752.

predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.*

It is unclear which theory Plaintiffs are attempting to advance, but under either standard they fail to state a claim. Under the first standard, Plaintiffs have failed to specify any similar incidents that might show that LMPD was on notice of the issue and acted with deliberate indifference toward the problem. Alleging past similar occurrences is a necessary component to a pattern of failure to train claim. *Fisher*, 398 F.3d at 849.

Plaintiffs additionally argue that, because Hogan did not receive additional training after he was previously found not to have used excessive force, LMPD is somehow liable for a general failure to train claim. (Compl. ¶ 91). First, Plaintiffs have not shown that Hogan used excessive force in the prior instance. The LMPD investigated and found he did not. No court of law appears to have found otherwise. Further, Plaintiffs recite only the barest facts underpinning that prior claim, rendering this Court unable to divine anything other than there was one complaint, the complaint was investigated, and Hogan was cleared of any charges of excessive use of force. Finally, this alleged single incident is clearly insufficient to create a plausible inference of a systematic failure to train officers necessary to impose municipal liability. *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006).

With respect to a single incident theory, Plaintiffs' argument is that LMPD did not implement implicit bias training until 2015 and that Hogan did not receive implicit bias training. (Compl. ¶¶ 87-91). Plaintiffs do not explain how Hogan's failure to receive implicit bias training resulted in the alleged constitutional violation. This failure to allege causation is fatal to the single incident claim. Moreover, no court has held that absence of implicit bias training fits within the narrow range of instances representing a failure to equip law enforcement officers with specific

tools such that a federal rights violation is the highly predictable outcome. Plaintiffs have therefore failed to state a single incident claim for failure to train.

C. **Counts VII and VIII**

In Count VII, Plaintiffs assert a state law claim of negligent supervision against LMPD. (Compl. ¶¶ 115-17). Metro Government is a government entity entitled to sovereign immunity under Kentucky law. *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004). As this Court has noted above, LMPD cannot be sued because it is a department of Metro Government, which has also been named as a party to this action. Accordingly, because any claim against Metro Government and its departments are barred by sovereign immunity, Count VII will be dismissed.

In Count VIII, Plaintiffs assert claims for punitive damages. (Compl. ¶¶ 118-19). Punitive damages are not an available remedy against municipalities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981). Therefore, the claim for punitive damages against Louisville Metro and LMPD is dismissed.

V. **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss (DN 6) is **GRANTED**, and the claims asserted against Defendants Louisville-Jefferson County Metro Government and Louisville Metro Police Department in Counts II, III, VII, and VIII of the Complaint are **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

September 3, 2019

cc: counsel of record